UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY VAUPEN,<br><br>    Plaintiff,<br><br>    v.<br><br>PHIL BRANSTON,<br><br>    Defendant. | Case No. 17-cv-05463-DMR<br><br>**ORDER RE DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 39 |

Defendant Phil Branston moves to dismiss Plaintiff Kimberly Vaupen's claims for negligence per se, negligent infliction of emotional distress, and intentional infliction of emotional distress, as well as her request for punitive damages in the First Amended Complaint ("FAC"). [Docket No. 39]. In the alternative, Branston moves for a more definite statement of these claims. Vaupen opposes. [Docket No. 40]. This matter is suitable for resolution without a hearing. Civ. L.R 7-1(b). For the reasons stated below, the court grants Branston's motion to dismiss in part, with leave to amend. The motion for a more definite statement is denied as moot.

## I.   BACKGROUND

Vaupen makes the following allegations in the FAC, all of which are taken as true for purposes of this motion.[1] On March 1, 2016 at 6:00 p.m., Vaupen was running southbound on the right side of the Iron Horse Regional Trail in Danville, California. FAC, ¶ 10 [Docket No. 38]. Branston was riding a bicycle in Vaupen's lane of travel without any bright lights, and on the wrong side of the trail, i.e., the left lane instead of the right lane. He was traveling at a "high and unreasonable rate of speed" when he collided with her, causing her to violently fall face first into

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted)

the asphalt. FAC, ¶ 10. As a result, Vaupen sustained personal injuries including the loss of her front tooth, deep lacerations and bruises to her face, lip, and hands, and torn ligaments. *Id*. Vaupen received several stitches to the inside and outside of her upper lip. She also had two cortisone injections in her left hand and underwent several months of physical therapy to retrain her left hand. *Id*. She still continues to experience pain when she eats, and has stiffness in her left hand when performing basic activities, such as lifting or closing her hand. *Id*.

Following the collision, Branston did not call for emergency assistance or notify the police, nor did he provide his name or contact information to Vaupen, the emergency team that arrived to assist her, or any persons that stopped to help. *Id*., ¶ 12. Vaupen eventually located Branston by posting about the incident on nextdoor.com, a social media website. *Id*., ¶ 13.

According to Vaupen, Branston gave a statement to the police about the incident on March 6, 2016, in which he presented conflicting accounts of the collision.[2] *Id*. He initially stated that he was cycling northbound in the middle of the Iron Horse Trail when his bike light illuminated a jogger on the trail. *Id*. At that point, he realized that he was going to collide with the jogger, but could not "alter his course." *Id*. Branston later stated that he "did not notice the jogger prior to the collision." *Id*.

On September 20, 2017, Vaupen filed this lawsuit alleging claims for negligence and negligence per se. Compl. [Docket No. 1]. Branston moved to dismiss the negligence per se claim, as well as Vaupen's requests for punitive damages and attorneys' fees. [Docket No. 9]. On January 26, 2018, the court granted Branston's motion to dismiss with leave to amend the negligence per se claim only. Order Granting Defendants' Motion to Dismiss with Leave to Amend ("January 26, 2018 Order") [Docket No. 36].

Vaupen filed a timely FAC alleging four state law claims: 1) negligence and recklessness; 2) negligence per se; 3) negligent infliction of emotional distress ("NIED"); and 4) intentional infliction of emotional distress ("IIED").[3] The FAC also contains a request for punitive damages.

---

[2] Vaupen did not attach a copy of Branston's statement.

[3] The FAC erroneously labels the IIED claim as the "third cause of action."

2

1  Branston moves to dismiss the claims for negligence per se, NIED, and IIED, as well as the request for punitive damages. [Docket No. 39].

## II. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.,* 349 F.3d 1191, 1199–200 (9th Cir. 2003). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted).

When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). A claim has facial plausibility when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

### B. Motion for Definite Statement

Federal Rule of Civil Procedure 12(e) provides that "a party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Motions for a more definite statement are "viewed with disfavor" and are rarely granted. *Cellars v. Pac. Coast Packaging, Inc*., 189 F.R.D. 575, 578 (N.D. Cal. 1999). However, courts may require a more definite statement "when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Cellars*, 189 F.R.D. at 578 (quotation and citation omitted).

### C. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be

3

given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In the absence of an "apparent" reason, such as undue delay, bad faith or dilatory motive, prejudice to the opposing party, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

**III. DISCUSSION**

Branston moves to dismiss the claims for negligence per se, NIED, and IIED, as well as the request for punitive damages.

**A. Negligence Per Se**

"[T]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." *Millard v. Biosources, Inc.*, 156 Cal. App. 4th 1338, 1353 n.2 (2007). "[A]n underlying claim of ordinary negligence must be viable before the presumption of negligence of Evidence Code section 669 can be employed." *Spencer v. DHI Mortg. Co., Ltd.,* 642 F. Supp. 2d 1153, 1162 (E.D. Cal. 2009) (citing *Cal. Serv. Station & Auto Repair Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th 1166, 1178 (1998)). The evidentiary presumption arises if: (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to a person or property; (3) the death or injury resulted from an occurrence of the nature the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his or her person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. Cal. Evid. Code § 669; *Jacobs Farm/Del Cabo, Inc. v. W. Farm Serv., Inc.*, 190 Cal. App. 4th 1502, 1526 (2010).

The court dismissed the original negligence per se claim because the complaint failed to identify the specific regulation, statute or local ordinance that Branston violated, and also failed to allege that "Vaupen's injuries resulted from the kind of occurrence that the statute, ordinance, or regulation was designed to prevent." January 26, 2018 Order at 4:25-5:6.

4

Vaupen's amended negligence per se claim alleges that Branston violated California Vehicle Code Section 21201(d)(1) ("Vehicle Code Section 21201") and Ordinance 38 Section 409.8(a), (b), (f), (h), (i), (j)(1), (j)(2), and (j)(3) ("Ordinance No. 38"); that he violated Section 21201 and Ordinance No. 38 by riding a bicycle in the wrong lane at an unsafe speed; that Vaupen was in the class of persons protected by Section 21201 and Ordinance No. 38; and that Branston's violation of Section 21201 and Ordinance No. 38 was a direct, legal, and proximate cause of Vaupen's injuries and damages. FAC, ¶¶ 25-27.

Branston argues that this claim remains insufficiently pleaded because the FAC does not contain allegations explaining how Section 21201 and Ordinance No. 38 apply here. He also contends that the FAC fails to identify the occurrences that Section 21201 and Ordinance No. 38 were designed to prevent, nor does it explain why Vaupen falls in the class of people these laws were designed to protect. Vaupen asserts that the claim is adequately pleaded because she has identified a statute and ordinance, and explained how they apply throughout the FAC. She does not respond to Branston's remaining arguments.

The court finds that Vaupen has adequately pleaded her negligence per se claim to the extent she bases it on Section 21201. The FAC alleges facts sufficient to show how Section 21201 applies to this incident. California Vehicle Code Section 21201(d)(1) provides that:

> (d) A bicycle operated during darkness upon a highway, a sidewalk where bicycle operation is not prohibited by the local jurisdiction, or a bikeway, as defined in Section 890.4 of the Streets and Highways Code, shall be equipped with all of the following:
>
> (1) A lamp emitting a white light that, while the bicycle is in motion, illuminates the highway, sidewalk, or bikeway in front of the bicyclist and is visible from a distance of 300 feet in front and from the sides of the bicycle.

Cal. Veh. Code § 21201(d)(1). California Streets and Highways Code Section 890.4 ("Section 890.4") defines a "bikeway" as any "facilit[y] that provide[s] primarily for, and promote[s], bicycle travel." Cal. Sts. & High. Code § 890.4. Vaupen's negligence per se claim "realleges and incorporates" all prior allegations, including that (1) the accident occurred on a trail shared by pedestrians and bicyclists, which could be reasonably construed for pleading purposes as a

"bikeway" under Section 890.4; (2) the bike Branston rode "did not have any bright lights" as required by Section 21201(d)(1); and (3) had he been traveling at a reasonable speed, and had he equipped the bicycle with a bike light, he would have seen Vaupen earlier and avoided a collision with her. FAC, ¶ 11 at 3:11-4:3.

Vaupen need not allege additional facts showing what kinds of occurrences Section 21201 was designed to prevent, that Vaupen was in the class of persons it was designed to protect, or that her injuries were the result of the kinds of occurrences the statute was designed to prevent, because these facts are self-evident from the plain language of Section 21202 and the allegations in the FAC. Section 21201 requires bicycles operated in darkness on bikeway to have a bike light to illuminate cyclists to other persons on the bikeway such as pedestrians, and thus was designed to protect cyclists and pedestrians on trails at night. Cal. Veh. Code § 21201(d)(1). According to the FAC, Vaupen was a pedestrian using a trail shared by cyclists such as Branston at night, which therefore places her in the class of persons Section 21201 was designed to protect. FAC, ¶ 10. The FAC also alleges that she sustained injuries when she collided with a cyclist (Branston) on a trail at night. FAC, ¶ 10. Given the language of Section 21201, Vaupen adequately has pleaded that her injuries were the kinds of occurrences Section 21201 were designed to prevent.

To the extent that Vaupen intends to base her negligence per se claim on a violation of Ordinance No. 38, some aspects of this claim are adequately pleaded while others are not. According to the FAC, Ordinance No. 38 provides in relevant part that it is "unlawful to ride or operate any bicycle . . . at any place within the District . . . [i]n a negligent, unsafe or reckless manner or in a way that endangers the life, limb, or property of any person or in violation of the provisions of [Section 21201]." FAC, ¶ 26(a). It then sets forth a series of restrictions on where, when, and how bicycles can travel on any District property. *Id*., ¶¶ 26(a) through (j).

To begin with, a basic pleading problem persists: the FAC still does not adequately identify Ordinance No. 38 with sufficient specificity despite the court's prior instruction. January 26, 2018 Order at 4:22-24. The only identifying information is the ordinance number and

section.[4] If Vaupen intends on relying on a violation of Ordinance No. 38 as the basis for this claim, she must identify the full title of Ordinance No. 38 in her next amended pleading.

However, assuming that Ordinance No. 38 is a regional park district ordinance that applies to this incident, Vaupen need not allege additional facts showing what kinds of occurrences Ordinance No. 38 was designed to prevent, that Vaupen was in the class of persons Ordinance No. 38 was designed to protect, or that her injuries were the result of the kinds of occurrences Ordinance No. 38 was designed to prevent, because these facts are self-evident from the plain language of Ordinance No. 38 and the FAC. According to the FAC, Ordinance No. 38 outlines rules that cyclists must follow on trails for the benefit of pedestrians, and thus is designed to prevent bike accidents between cyclists and pedestrians on trails. FAC, ¶ 26. According to the FAC, Vaupen was a pedestrian using a trail shared by cyclists such as Branston, which therefore places her in the class of persons Ordinance No. 38 was designed to protect. *Id*., ¶ 10. The FAC also alleges that she sustained injuries when she collided with a cyclist (Branston) on a trail. *Id*., ¶ 10. Since the text of Ordinance No. 38 suggests that it is designed to ensure a safe coexistence between cyclists and pedestrians on trails, it is clear that her bike accident-related injuries were the kinds of occurrences Ordinance No. 38 was designed to prevent.

To the extent that Vaupen relies on certain sections of Ordinance No. 38 such as section 409.8(b), (h), or (j) as the basis for this claim, the FAC sufficiently alleges how these sections apply to this incident. For example, the FAC asserts that Branston violated section 409.8(b) and (h), which prohibit cyclists from traveling at excessive speeds, i.e., over 15 mph over the posted speed limit, especially when passing other trail users, or traveling in an irresponsible manner in violation of published trail etiquette or posted bicycle speed limit. FAC, ¶ 26. According to the FAC, Branston, a cyclist, was riding a bicycle on a trail at night at a "high and unreasonable rate of speed," i.e., greater than 15 mph, when he collided with Vaupen. FAC ¶ 10 at p.2:10-23 and

---

[4] In her opposition, Vaupen identifies the ordinance as East Bay Regional Park District Ordinance 38. Opp'n at 2:21, 5:26. The court disregards this allegation because it is not contained in the FAC. *Schneider v. Calif. Dep't of Corr*., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis omitted).

7

p.3:24-4:3. Additionally, the FAC also asserts that Branston violated section 409.8(j), which requires that any bicycle operated during darkness on any District property "shall be equipped with lighting as specified in California Vehicle Code Section 21201(d)." FAC, ¶ 26. According to the FAC, the bicycle that Branston rode did not have any bright lights as required by Section 21201(d)(1). *Id*., ¶ 10 at 3:24-4:4.

However, to the extent that she relies on section 409.8(f), (g), (i), (j)(2), or (j)(3) of Ordinance No. 38 as the basis for this claim, the FAC does not provide a sufficient factual basis to support a claim based on any of these sections. For example, the FAC alleges that Branston violated section 409.8(f) and (g) of Ordinance No. 38, FAC, ¶ 26 at 4:20-23, which prohibit cyclists from riding in restricted areas of the park, or areas temporarily closed to cyclists for safety reasons. However, there are no allegations that Branston was cycling in a restricted or off-limits area of the trail, so it is unclear whether this section applies. Similarly, the FAC asserts that Branston violated section 409.8(i), which provides that bicycles "must travel in a single file when passing others and in single file on the right side of the trail when in turns, blind corners, or when being passed." FAC, ¶ 26. But, it does not allege that Branston was turning, in a blind corner, or being passed when he encountered Vaupen on the trail, so it is unclear what action Branston took that violated this section. The FAC only asserts, without explanation, that he was riding on the wrong side of the trail (on the left, instead of the right right). Furthermore, since there are no allegations about verbal warnings or other sound warnings, it is unclear how Branston violated section 409.8(j)(2), which requires a verbal warning or the sounding of an audible device by approaching bicyclists no less than 50 feet away when approaching or passing other trail users, FAC, ¶ 26. Finally, although the FAC alleges that Branston violated section 409.8(j)(3), it does not provide any information about this section, so it is entirely unclear whether this section applies.

Therefore, the court grants the motion to the extent that Vaupen intends to base her negligence per claim on a violation of Ordinance No. 38, and grants leave to amend, but only to address the deficiencies related to the Ordinance No. 38-based claim identified in this order.

8

### B. Punitive Damages

On January 26, 2018, the court dismissed the request for punitive damages "<u>without prejudice to seeking timely leave to amend based on later-discovered facts</u>." January 26, 2018 Order at 7:3-4 (emphasis added). The court found that the facts did not "support a punitive damages award as a matter of law" because, "[a]t most, the allegations amount[ed] to negligent behavior." *Id*. at 6:16-18.

Branston argues that the court should dismiss the request for punitive damages because Vaupen failed to seek prior leave of court. He also contends that the request fails on the merits because she has not pleaded any new facts to support the request, and, as currently pleaded, the allegations only establish negligence. Vaupen contends that she was not required to seek leave because she had the "right" to amend the FAC. She also asserts that the FAC alleges "later-discovered facts" supporting the request for punitive damages.

Vaupen was required to seek prior leave of court to add a request for punitive damages. January 26, 2018 Order at 7:3-4. Because she failed to do so, the court dismisses the request for punitive damages without prejudice and declines to consider the parties' remaining arguments.

### C. NIED and IIED

#### 1. Rule 15

Branston contends that Vaupen's NIED and IIED claims should be dismissed because she failed to obtain prior leave of court to add these new claims. Vaupen does not address Branston's Rule 15 argument. Instead, she argues that she believed she had the right to add new claims because the January 26, 2018 order did not state that she could not add new claims.

Rule 15(a)(1) provides that a party "may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2)[5]. "The court should freely give leave when justice so requires."

---

[5] Branston contends that the right to amend a pleading once as a matter of course terminates upon

9

United States District Court
Northern District of California

Fed. R. Civ. P. 15(a)(2).

A court has discretion to strike a complaint where it fails to comply with Rule 15(a). *See Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 517 (N.D. Cal. 2004) ("On occasion, a party's failure to comply with the requirements of Rule 15(a) will prompt courts to strike amended pleadings—or to ignore them outright."); *Brown v. Wireless Networks, Inc.*, No. C 07-4301 (EDL), 2007 WL 3105069, at *1 (N.D. Cal. Oct. 23, 2007) ("A court may strike a complaint where a plaintiff has failed to comply with Rule 15(a).") (citing *Serpa v. SBC Telecomms., Inc.*, 318 F. Supp. 2d 865, 875 (N.D. Cal. 2004)). However, "many courts have accepted untimely amended pleadings, even when the relevant party did not first obtain judicial permission or the consent of the opposing party." *Sapiro*, 221 F.R.D. at 517 (citing cases). "This is often true when 'leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change.'" *Id.* (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1484, at 601–02 (2d ed.)).

In the interests of justice, the court will consider the NIED and IIED claims. Although Vaupen was required to obtain Branston's written consent or prior leave of court to include the NIED and IIED claims, *see* Fed. R. Civ. P. 15(a)(2), leave to amend would have been granted in this instance, particularly because Branston will not be prejudiced by the amendment as the case is still in the pleading stage.

### 2. NIED

"Negligent infliction of emotional distress" is not an independent tort doctrine. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) ("[T]here is no independent tort of negligent infliction of emotional distress"). Rather, "[n]egligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Griffith v. Bank of Am., N.A.*, No. CV–11–5867 PA (FFMx), 2011 WL 6849048,

---

the granting of a motion to dismiss and the dismissal of claims or counterclaims, citing to *Upek, Inc. v. Authentec, Inc.*, No. 10-424-JF PVT, 2010 WL 2681734 (N.D. Cal. July 6, 2010). *Upek, Inc.* is factually inapposite. *Upek* did not involve an amendment of a pleading pursuant to a motion to dismiss. At issue in *Upek, Inc.* was the effect of an amended complaint on the right to file an amended counterclaim as a matter of course.

at * 9 (C.D. Cal. Dec. 13, 2011) (quoting *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993)). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savs. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal .App. 4th 472, 481 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F.Supp.2d 1191, 1198 (E.D. Cal. 2009) (quoting *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004)). Additionally, the plaintiff must allege that he or she suffered "serious" emotional distress. *See Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 927-28 (1980). "[S]erious mental distress may be found where a reasonable man [or woman], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Molien*, 27 Cal. 3d at 928; CACI 1920 ("Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with [the emotional distress].").

Branston contends that the NIED claim is insufficiently pleaded because Vaupen fails to identify the specific duty he owed her, allege any facts supporting the allegations that she was in the "specific zone of danger and at risk of physical harm," or allege any facts supporting the allegation that he caused her "severe emotional distress." Vaupen responds in one conclusory sentence that the NIED claim is adequately pleaded, and simply points to paragraph 33 as identifying the facts relevant to the NIED claim.

In reviewing the NIED claim, the court finds that it is conclusory and merely restates the elements of the claim, which is insufficient to defeat a motion to dismiss. *See Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1261 (N.D. Cal. 2014) (on a Rule 12(b)(6) motion to dismiss, "the court need not accept legal conclusions, including 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In her next amended pleading, Vaupen must allege all facts supporting each element of her claim.

Therefore, the court dismisses the NIED claim with leave to amend to address these

1 deficiencies.

### 3. IIED

"To recover for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *McDaniel v. Gile*, 230 Cal. App. 3d 363, 372 (1991). Courts have emphasized that extreme and outrageous conduct is conduct that "go[es] beyond all possible [bounds] of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1608 (2009) (quotation omitted). "With respect to the requirement that the plaintiff show severe emotional distress [for an IIED claim]," the California Supreme Court "has set a high bar." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes*, 46 Cal. 4th at 1051 (citation and internal quotation marks omitted)).

Branston argues that Vaupen fails to state an IIED claim because she pleads no facts showing that his conduct was outrageous or that she suffered the type of "severe emotional distress" necessary to support this claim. As with the NIED claim, Vaupen responds in one conclusory sentence that the IIED claim is adequately pleaded and points to paragraph 39 as identifying the facts relevant to the IIED claim.

Vaupen has failed to plead facts sufficient to state an IIED claim. Vaupen simply recites the elements of the claim, which is insufficient to survive a motion to dismiss. *See Gilmore*, 75 F. Supp. 3d at 1261; *Iqbal*, 556 U.S. at 678.

Accordingly, the court dismisses the IIED claim with leave to amend.

### IV. CONCLUSION

In conclusion, the court grants Branston's motion to dismiss with leave to amend, but only to address the deficiencies in her negligence per se claim based on a violation of Ordinance No. 38, NIED and IIED claims discussed above. If Vaupen wishes to file a second amended complaint, she must do so **within 14 days of the date of this order.** However, Vaupen must file

12

a motion for leave to amend the complaint if she wishes to revisit punitive damages or add additional claims. The motion for a more definite statement is denied as moot.

**IT IS SO ORDERED.**

Dated: May 10, 2018



Donna M. Ryu
United States Magistrate Judge